All right. Welcome to the in-bank courtroom panel. I'm honored this week to be sitting with Judge Clement and Judge Ho. As you know, Judge Ho is not here this morning. Regrettably, he and his family were the victims of the last Dallas tornado, which caused considerable destruction to the family home and so forth. But he is fully engaged in the cases and will participate in all the decisions of cases that we hear this week. To that end, he will be listening to the oral arguments. So I would just underscore what we normally say is to make sure you stay in the microphone and fully respond to the questions so when he and we later are listening to the tapes, we fully pick up what the arguments are. So he will be engaged with the cases and we'll all three confer based on the oral arguments and the briefing and we'll all decide the cases. So that's the only thing that may be a little bit different. All right. With that, we just have two cases this morning. First case up is Benfield v. Magee. Mr. Byrd. Thank you, Your Honor. Edwin Byrd on behalf of the defendant, Joe Magee. There's only one defendant. That's an individual. And that's why a good bit of what we're talking about this morning should relate to qualified immunity. I think the district court recognized that there were at least was a close question on certain of the issues. And I believe that this court would be could assist the district courts in trying to get some guidance with respect to the pleading burdens on several of these relatively new developing issues. The first one I wanted to talk about was the inference of retaliatory causation. There's not an allegation of direct evidence here. There's not a temporal proximity here. It's 18 months, approximately, 18 months. So you can't rely upon the temporal proximity. So there's got to be an inference somewhere else in this pleading. And I think that's the primary place that I'd like to focus because it's one of the easier places to address this. This court . . . In this instance, we're on 12 v. 6, right? Correct. So the district court determined that kind of chronology or sequence of events lent themselves to sort of an inescapable conclusion that the defendants had to be aware of the circumstances. So given, I guess we can take notice, DeSoto Parish, Mansfield, relatively small municipality, et cetera. So in this chronology and the allegations of what happened, that one could glean the length that's necessary. You take the position more is needed. Is that what you argue? That's right. More and better. It's conclusory allegations. I mean, if the sequence that supposedly provides this inference of retaliatory causation are very general allegations, are harassment by McGee or his underlings, that's pretty broad. If this court were addressing that as a cause of action, of course that would not meet the standard. It's conclusory. If you go through each of those allegations that allegedly provide this inference, they're all similar. And the court's familiar with it, so I'm not going to run through each of them, but there may be four or five different statements. Harassment, spoke to him about his work, his education, just a few pretty innocuous sounding things. But more importantly, they don't relate, they aren't attributed to Mr. McGee. They're not given any time as to when it occurred. One of them... The time frame from the firing and whichever is the most recent of these harassment allegations. That's correct, Judge. There's not a reference to time on any of them. It just says after the letter, these things happened. And they're not attributed to Joe McGee, but to him or his underlings in an alternative. And that's one of our thoughts too, is that you shouldn't be able to plead generically to them. I think that the importance that the courts could use guidance on is, are the standards that are so now familiar, the Twombly type of analysis, necessary to get around the lack of a temporal proximity with this exception to that exception? And I submit that if they're able to get around the exception with this, then it would not be difficult at all to say, well, I know it was a year, or I know it was 18 months or two years, but I've been experiencing some difficulty at work. And not have to attribute it in any more detail, not to have provide any more context for the and you know, and I know, and Judge Clement, because we're all Louisiana lawyers, Louisiana is a fact pleading state. Federal court is notice pleading. So, are you making an argument that Twombly, et cetera, has sort of imported a sort of fact pleading notion? In other words, said differently if the other side says, look, this is federal court, it's notice pleading. I've given notice and this chronology should be sufficient. If I were in state court, yes, I would have to lay out all of these details because that's a fact pleading state. So, is the notice, I mean, I sort of know what your answer is, but just pushing you on your argument, it is a notice pleading requirement in the federal rules, right? And so, if you're chapped in verse, aren't you really arguing that the notice pleading aspect doesn't apply where we have either qualified immunity or something else? Well, I agree that it's notice pleading, but I submit that every time this court sits, it's hearing cases addressing Twombly under circumstances that are exactly like this. And they're saying, hey, this is conclusory. We're not allowed to accept as true the factual allegation that's conclusory. A statement that says harassing about going back to school, accusing of acts of terrorism, telling to go to counseling. Those are, some of it have some factual component, but they're primarily conclusory. And you can't look at that and test what the heck it's talking about. Who is this that did it? When did they do it? How does that provide an inference that says this letter is the retaliatory motive 18 months later for this other activity? So I think that is, what I submit is the court should use the well-worn treatment of Twombly to show if they've adequately pled this inference of causation. Judge Stewart, you mentioned the knowledge. I think that's a little bit different. I mean, the chronology is to try to get away from the 18-month problem. The knowledge allegation is even more kind of fundamental than that. Yes, it is a small parish, but there's not an allegation that this was referenced anywhere. I mean, it went to this police juror. It could have gone to police jurors. There's not an allegation in this complaint that Mr. McGee ever got it, that he was cc'd on it. It wasn't directed to him. The fact that it was written is not a particularly strong inference of much, really, because he says he already made these recommendations, all of them, to the administration. So there has to be a basis to say this letter and the type of allegations that were sent is a fundamental pleading that needs to be made. Not necessarily how he knew, but that he knew. I mean, how is that not rising above the speculative level here? He's the EMS director or administrator, and a letter went to a police jury. It is in the indirect kind of chain, but there's no evidence that it had anything, anyone communicated it to the administrator. Mr. Baird, before you run out of time, can you address your allegation that the free speech claim was not made in the lower court? That's the second individual. That's Mr. Binfield, and I mean, you read the pleading, and it's not clear to me. I mean, he pled, Warren makes a First Amendment speech claim on a matter of public concern. Next sentence. Binfield was mistreated because he associated with him, and then the briefing, we just said, dismiss all the claims, and then we even included in the... You cited the cases to the district court that you've cited to us in your briefing. Did you argue this before? Yes, we did. I mean, we argued that he hadn't failed, he hadn't stated a speech claim, he hadn't communicated something. It wasn't fleshed out in as much detail, of course, but my point is that that should be the plaintiff's burden to help the court see what it is to overcome qualified immunity. What is the So... What reverts to the plaintiff. That's right. I mean, he needs to be able to... There's not a case cited that says... I mean, now they're saying, oh, the First Amendment speech claim is silence, and we would not communicate, we wouldn't tell the boss that he had done this, to make it simple. We would not say something about his other employee. If that had been argued, I mean, surely that would be a Garcetti setting there, because it's workplace, it's a statement, it's not made to the supervisor. There should have been briefing by the plaintiff to point that out to the court. Instead, the court said, Mr. Byrd, you did not address that type of a claim in your motion, so we're going to deny it. Not, you move for dismissal, you've made a good effort to try to glean from this what the causes of action are. The plaintiff has the obligation to convince us what it is, and to demonstrate what the constitutional claim is. They shouldn't be able to just now come and say, well, it was really a silence as speech. I mean, we did mention that to the court below, but we did not obviously brief it in detail, because we weren't aware that that was the claim. Another area, I think, that needs help, really, with the district courts would be how Garcetti applies under these circumstances, and I think that this is a case where he's making his allegations, it's not to a third person, it's not, and to make it simple, his ordinary job duties would not include making a statement about improving the workplace to some third party or to the public or to the news media or something like that, but an employee, a senior employee, who's communicating with the police jury, who controls the funding of the entity, who appoints the board members to the entity, it clearly is indirect chain. It's not, maybe not direct chain, I would argue that it could be, but it's clearly indirect chain, and I think that's an important place for and in Garcetti there was no qualified immunity because it was clearly established that you can't go out, if you go outside of your chain, then that's not something that you're acting as the employee. Well, here it's surely not established that if you communicate to a parish police juror who oversees the budget, who oversees the appointments, that that's clearly established that it's not, doesn't fall within Garcetti, so I think that that's another place for qualified immunity, is that really clearly established that this kind of communication sent to this particular person is unconstitutional, if you even assumed he got it and you assumed he had notice of it. Thank you. All right, you've reserved your vote, Sam, if you need it. All right, Mr. Denny. Good morning, your honors. Bryce Denny on behalf of the appellant. I want to go into the issue that was being discussed during the appellant's presentation concerning the communication being made to the police juror and somehow that there's qualified immunity because there was not a case that established that that was the violation of a constitutional right. I think it is very clear that an employee's right to freedom of speech was established in 2014 in the Fifth Circuit, so clearly that right was known. They have tried to expand it to whether qualified immunity covers this type, whether he knew, whether Mr. McGee should have known that it was a constitutional violation to report the, to make a letter sent to the police juror, and the trial court cited two cases, Modica and Anderson, both of which she felt was on point and I agree that they were on point. Modica involved a cosmetology employee of the Texas Board of Cosmetology who wrote and complained to her state representative. This is very similar to an employee of the DeSoto Parish EMS writing to the police jury. Yes, they do provide the funding for it, but as the court noted, your honor, Jimbo Davlin, the police juror, was only one of a number of police jurors. He couldn't vote, for example, to remove a board director. He had no direct ability to address any of the complaints that Mr. Warren was making. He could not discipline Mr. Warren. He could not fire Mr. Warren. It was also very similar to the Anderson case, which was a Texas case where a law clerk complained about the judge that she worked for to the Supreme Court, Texas Supreme Court's Chief Justice, and the Fifth Circuit held that that was clearly inappropriate communication and that was, as in this case, there was no qualified immunity for that. That is protected speech. It is not an employee's speech. Now, the causation is, I think, the key issue in this case, and it is the one that's been addressed, and the letter which was attached to the petition clearly made some complaints of both public and private concerned, and those are outlined in the district court's opinion, and following those concerns, we've alleged that there was a pattern of harassment and discrimination in response to that, and it's not... Do you acknowledge that there's no pleading demonstrating awareness of the letter by Mr. McGee? There is not a direct allegation to that effect in the pleading. That is correct, Your Honor. I mean, that'd be better, right? That would be better. Yes, it would, Your Honor. And as far as this pattern that you're referring to, you never said when this harassment took place or who the harassment was on. There are no dates, that is correct, Your Honor, but it does state that, for example, he regularly was encouraged to quit, and the term regularly was used. But it doesn't say by whom or... I think it doesn't... Between the letter and the firing, which you need to fill in with something more particular than vague allegations, I think. I think that the issues, though, they're certainly not conclusion. It's all actions by Mr. McGee, that he denied the supervisor promotion, that he was... It was terrorism because he hired an attorney. He was told that. False accusations about having a woman up at the fire station for the purposes of sex, to have counseling or be terminated. His religious beliefs were criticized. I mean, that is an ongoing behavior, and there are cases... One of the problems with the temporal proximity, it's good in cases, and plaintiff's lawyers use it and defense lawyers use it. Well, you were fired two days after you took some action. The temporal causation is probably going to be the primary basis for the case. But what do you do now that we have a more can't have that direct, close temporal connection between some act and retaliation for that protected act? So things do get stretched out. And we cited some cases, and the appellant cited some cases. The Mooney case, which I believe was three years. There's another case that talks about 19 months. There's a case that talks about 13 months being okay. And what those cases say... I mean, the time limit only gets you so far. But I mean, fundamentally, don't you have to at least allege that the person knew about it, or got it, or something, in order to just make the link, make the connection? I mean, you're in the pleading stage, admittedly, but this was like, what, 18 months in between? That is correct, Your Honor. Which is a long time. I mean, there's a lot of things that go on in between. That is very correct. But I think there was a sufficient, not the most artful pleading in the world, admittedly. But I think when you read the entire complaint, it's clear that Mr. McGee knew about this letter. I think the judge correctly said that, yes, there's enough there to show that he did know about the letter. And there are a lot of things that occurred. But 18 months is not even the... We cited a case where it was a three-year term. And the rule's pretty clear. I don't think it's anything that's a secret. I don't think it's a secret. I think it was known at that point, because there's cases older than 2015 that talk about it, that if you have a chronology of some kind between the act that precipitated the retaliation and the ultimate retaliatory act, that that would survive. And in those cases, we had summary judgment. One involved a trial, a post-trial review that was reversed for other reasons. But if you had the link on causation, and you have the 18 months, you might get past 12B6, and then it becomes a summary judgment matter, proving that 18 months is not too long, et cetera, et cetera. I guess the question is, though, can you get there without making some assertion? My question, did you seek leave to amend or... We did not, Your Honor. And I think here, we do survive. We might not... Summary judgment's a different issue, but of course, in summary judgment, you have discovery also, where you can get more details and more facts about exactly what happened, including things such as emails. Here, it is simply based on the pleadings, and I believe we do survive a 12B6 motion on the issue of causation, because there are cases, again, that we have cited that show that as long as you have some chronology, that events took place between the protected event and the ultimate discharge, that you can survive certainly a 12B6, because there's a case that we cite where they survived a motion for summary judgment on that basis. So it's no longer a simple situation where 18 months is too long, or even three years is too long, if you can explain to the court and fill in that there were retaliatory activities that took place in between. And that also protects this court from... Because the employees are kind of in a dilemma. If somebody... If some of the acts here were brought to the court's attention a year after, or six months after, the court would have said, well, wait a minute. You haven't been fired. There's been no adverse employment action. You're too early. You're not here. So I don't think we ought to reward employers who recognize that they should delay and take time and kind of spread the time out and harass the employee with these little events in between and say, okay, now we're going to fire you for what clearly was, at least as we've alleged, complying with doing what Joe McGee approved for a number of years, that these employees could sign off, that Mr. Warren could enter the physician's signature on the records. And it was done. Did that mean... The fact that it was signed by someone other than the physician, does that mean that that examination didn't take place? I'm sorry, I didn't catch the last part. That the... Whatever the test was that did not actually take place? No. All of the training was performed. What happened was Dr. Farquhar was in the military and would go overseas and wasn't available. And so Mr. Warren was in the military. All of the training, in fact, did take place. It was simply the signature. And when the new physician came in, the new medical director, he wanted the employees to sign it directly, which wasn't a problem for Mr. Warren, but then they were fired for doing that. What's your best case to keep you in court? My best argument to stay in court? No, your best case. I mean, we were inclined to hang our hat on a case that seems to keep you in with chronology, but maybe it concludes reallocation. What's the strongest case or the most probative case that would help us? I like Brady, which is an 18 months case. It was overruled on other grounds. Ms. Brady, the person who fired her was not the wrongdoer complained of, and she had good for a promotion. So she ultimately lost. But in that Brady case, they did accept a 18 month timeline. There's also Balderas, which was discussed by both parties at length. And there's a lot of parties in there, but they talk specifically about a Thomas and Leo Balderas and they are Teresa and Leo Balderas. And they say that a year and they say that was okay because there were events that took place. And the third case is the Mooney case, which was cited by the three year timeframe. So the Mooney, Balderas, and the Brady cases are the three cases that I would rely on the most. I believe they would be good reading for the court because they do support the longer time period. Now, the other issue is, was whether this was a matter of public concern in this chain of command issue with Mr. Dablin at the police juror. And as we noted earlier, uh, the court cited cases that were appropriate and also that Mr. Dablin could not hire or fire, couldn't discipline him, couldn't address his employment issues. And I think this is simply somebody reporting a complaint to a legislative body, to someone affiliated with a legislative body, just as they did in Modica and the Anderson cases that were cited earlier in today's argument. I believe that our pleading was sufficient. I believe it is a notice pleading, not a fact pleading under state law. And I believe that it was sufficient. And I don't believe that our allegations concerning what happened to him were conclusory. They were factual and they do discuss that it took place during this 18 month, 18 month time frame. So I do believe that that is inappropriate. So what about Mr. Benfield's claim? With respect to Mr. Benfield's claim, it is the more problematic claim, frankly, for the, uh, appellee. I do believe that there was a speech claim there that was not addressed. And I believe the court is correct that it was with respect to his refusal to provide a false report, which I believe is going to raise an issue of protected speech. But that is the allegation that was there. That is based on that one statement that he refused to swear to a false statement against Mr. Warren. And that's why he was fired. And that is the free speech claim. There's not a lot to it, but I believe that the trial court was correct in holding that that was never addressed and that she was not going to dismiss that claim at that time. Does the court have any further questions? Thank you. The cases that were referenced there, the, the Mooney case, we did cite it. We relied upon it, um, for the proposition that there has to be non-conclusory allegations that provide this inference of retaliatory motive when, without regard to the temporal connection, and if you look at, I mean, my notes on that case was if they had alleged this kind of thing, we wouldn't have been here on this claim. We wouldn't have. It's great detail. And you read that and you get, it would satisfy Twombly that there was activity by the person at issue who had knowledge. They're even describing the knowledge and that it began when this happened and it detail after detail that provides the, the ability for the court to draw that inference. The Valdez case, of course, that's the one that's caused a lot of folks to try to figure this out. It's hard to follow. There's multiple opinions in there. Um, but obviously, and that was a 12B6 that included, it wasn't on the causation issue, of course. Um, but it was, it's no comparison to say that complaining outside of the chain to the judicial commission by a law clerk is analogous to a DeSoto EMS paramedic complaining to the police juror who admittedly now is in charge of the budget of the agency that's being addressed, that appoints the board members. It's definitely indirect, but it's not going to be analogous to, to the Mr. Anderson's complaint against the judge in the Valdez case. A state legislature, I mean, in the, in the Modica case, it's the cosmetologist who was supposed to be out doing, doing the, uh, uh, I can't remember exactly what the work was, but it was some type of administrative review stuff. But she made the state legislature, nothing to do with this entity, not even close to being in the chain, much less the, the direct chain. Um, yeah, there are going to be cases where there's, where you can have 18 months plus an adequately pled chronology and adequately pled, meaning it would satisfy the type of analysis that we do with Twombly issues and provide that inference. With respect to, uh, Mr. Benfield, yes, it was, it was never addressed by the plaintiff. And if, if the obligation is to glean from this every conceivable cause of action that could be out there, very subtle. And part of it is we, when they identified their causes of action, they didn't include that. But there's a sentence in there that says he was asked to, to say that this guy had done this and he wouldn't say it. And he was asked by his employer. If that's a speech claim, then it's sure subtle and it shouldn't be the burden of the individual being sued here to try to flesh that out. We point, we said we, they haven't stated a speech claim. They had, we said specifically, Mr. Benfield has not alleged that he spoke on a matter of public concern. That was the sentence in the motion and in the memo. In response, there's a reference to that sentence that says, I didn't, you know, he told me to change the name and I wouldn't, or he, he told me to document this wrong and I would not. Um, not a case is cited, not a single case. And I think if that were briefed to this court, I'd probably be arguing that they abandoned that because they hadn't briefed that in detail. But I think what's more important, free speech claims just don't seem to have been fleshed out that much below. You agree with that? I agree for Mr. Benfield, for sure. Well, yeah, that's what I was really talking about. He says, I have an association claim and most of the briefing was on that. No one said, hey, we're seeking partial dismissal. We don't, we're not even going to pursue a free speech claim, dismissal of a speech claim. We said, no, we think that that is the closest claim that you've got being pled. And it was the focus because it really was. And then in hindsight, they come, I think, say, well, there's another one here. I think they didn't address it initially because it was so clearly a Garcetti problem with that. An employer telling his employee to say something or not say something is clearly a Garcetti issue that should be controlled. And it shouldn't have been, it shouldn't have been difficult. Here where you have an individual defendant, the burden of having to undergo discovery and all the mess that's going to be involved in these kind of allegations involving two plaintiffs, that's why 12B6 is so important in this kind of setting, particularly where it's First Amendment. It's a legal issue on several of these elements. Thank you. All right. We have your argument. All right. Thank you, Mr. Byrd, Mr. Denny, for your attention and for all the questions.